UNITED STATES, Appellee

v

DONALD P. WALKER, Private E–1, U. S. Army, Appellant

8 USCMA 640, 25 CMR 144

No. 10,213

Decided January 31, 1958

First Lieutenant William L. Garwood argued the cause for Appellant, Accused. With him on the brief were Colonel Edward M. O'Connell and First Lieutenant Jerome H. Gerber.

First Lieutenant Richard W. Young argued the cause for Appellee,

United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged with robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922, and with assault in which grievous bodily harm was intentionally inflicted, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. Upon arraignment, he entered pleas of guilty and the court returned findings on those pleas. At all prior levels, the offenses of which accused was convicted have been treated as separate for sentencing purposes, and we granted review to determine whether they are multiplicious.

Neither side presented evidence prior to the announcement of findings. However, during the presentencing procedure, the prosecution introduced a stipulation of facts and called the victim of the robbery to testify. Because multiplicity arises only when an accused is punished twice for the same offense, we are at liberty to consider the facts presented in that phase of the proceeding. The stipulation tells of the accused and four others formulating a plan on the evening in question to "roll someone"; of this group driving in an automobile to a nearby town in search of a likely prospect; of their inducing a soldier to accept a ride with them back to camp; of proceeding with the accused in control of the automobile to a desolate spot; and of the accused there turning off the car lights and saying, "This is it." Thereafter, the stipulation narrates that the victim was dragged from the car and beaten with a pistol; that he sustained a serious scalp wound and the loss of several teeth; that his money and personal effects were then taken; that the accused, who apparently remained all the while in the driver's seat, followed the victim along the road in the car at one time during the beating as he was being chased by one of the group; and finally that the accused received $5 as his share of the avails of the robbery. By stipulation the victim corroborated the ac-

count of the robbery, but gave a more complete list of his injuries, testifying to the loss of six teeth and the incurrence of a wound inside the mouth, which took ten stitches to suture, and a wound on the back of the head requiring nine stitches. More importantly, his testimony lends clarity to the actual sequence of events. After he had been beaten, the victim testified that he got free momentarily but was caught again and only then relieved of his billfold and everything he had in his pockets. After the taking, his testimony was that the robbers departed.

In presenting this evidence, the prosecution either intended to show aggravating circumstances or sought to demonstrate the separability of the two offenses to which the accused had pleaded guilty. But, regardless of the purpose, the evidence makes certain the possibility suggested by the specifications underlying the two charges, namely, that the two offenses arose out of one and the same transaction.

On the pleadings and evidence thus adduced, the law officer advised the court that it could assess punishment as great as the maximum imposable for each of the offenses of which the accused was found guilty. The court returned a sentence of dishonorable discharge, total forfeitures, and confinement at hard labor for eight years. Because of a pretrial understanding, the convening authority approved the findings but affirmed only so much of the sentence as provided for a dishonorable discharge, total forfeitures, and confinement at hard labor for two and one-half years. The board of review affirmed without opinion, and we granted the accused's petition for review, which places in issue the law officer's instruction to the court on the maximum punishment imposable by the court-martial.

From all of the foregoing, it follows that we are confronted with a question similar in all respects save one to that

**641**

disposed of in United States v McVey, 4 USCMA 167, 15 CMR 167. In *McVey*, the court-martial was instructed that it could cumulate sentences for concomitant offenses of aggravated assault with a weapon used in a manner likely to produce serious bodily injury, and robbery. This Court held that separate punishment for both offenses in that case was multiplicious within the coverage of a provision of paragraph 76a(8), Manual for Courts-Martial, United States, 1951, which sets forth the following rule:

". . . An accused may not be punished for both a principal offense and for an offense included therein because it would not be necessary in proving the included offense to prove any element not required to prove the principal offense."

That conclusion was reached because it was necessary to show an assault with a weapon used in a manner likely to produce great bodily harm in order to prove the allegations of force and violence and sustain the burden of proof for the robbery alleged, since no other act was done by that accused.

The sole differentiating feature of this case is the seriousness of the physical injuries arising out of the assault which constituted the force and violence by which the robbery was committed. Here the proof of that element necessarily established the offense of intentionally inflicting grievous bodily harm, for that was the only force employed. That degree of aggravated assault is of a more serious nature than an assault with a weapon used in a way likely to cause grave injuries, but, regardless of the severity of the injuries, essentially the case at bar is of parallel structure. When we consider the allegations of the specifications in conjunction with the evidence adduced in the presentence phase of this trial, the acts proving the force and violence blend with the other necessary elements to establish the crime of robbery committed in this case.

We think the following language from United States v McVey, supra,

points to a solution of the instant case. There we said:

"At common law, and in most American jurisdictions, a simple assault and battery was and is sufficient force and violence to make out the offense of robbery, when the other elements are present, 2 Burdick, Law of Crime, 1946 ed, § 591; 2 Bishop, Criminal Law, 9th ed, § 1167; 46 Am Jur, Robbery, § 15; and this is the military rule as well. Manual for Courts-Martial, supra, paragraph 201, page 363. Actual force or violence can be applied to a victim with or without using a dangerous weapon, and fear in his mind can be created by threats regardless of dangerous instrumentalities. Had the allegations negatived the use of a deadly weapon, or had they suggested a non-aggravated type of assault, it could be argued that the more serious form of assault was not encompassed within the allegations of the specifications. But that is not the situation here. In this instance, we have a situation where the specification is couched in general language and the actual force and violence used to commit the offense of robbery was applied by means of using weapons in a way in which great bodily harm was likely to result. To meet the allegations and sustain the burden of proof, it was necessary to show that the victim was struck with a club and strangled with a belt, for no other act was done by the accused. These acts were not divisible, factually or legally, and if they were, qualitatively, greater force than necessary to support an allegation of robbery, they were nonetheless essential to this robbery specification. While an allegation of an aggravating factor may be surplusage to a principal offense, it may satisfy an element of the lesser. Therefore, we conclude that where, as here, the allegations of the specification are broad enough to permit proof of the use of a deadly weapon, and its use constitutes the force and violence of the robbery charge, an aggravated assault is a lesser crime included within the latter. United States v Cooper, 2

USCMA 333, 8 CMR 133; United States v Craig, 2 USCMA 650, 10 CMR 148." [Page 173.]

Fitting the facts of this case to that rule, we reach the conclusion that multiplicity exists. The robbery specification alleges that the accused stole $25 from the person and against the will of the victim, by means of force and violence, and the evidence shows that the means by which the robbery was perpetrated constitute the acts which would prove the specification alleging assault wherein grievous bodily harm was intentionally inflicted. If the pleadings allege and the facts establish the necessary elements of assault with a means likely to produce great bodily harm or of assault with serious injuries intentionally inflicted, either may form the base to support the robbery charge. It must be remembered that an allegation of force and violence without more is broad enough to embrace injuries intentionally inflicted. Certainly, if force which is likely to produce grievous bodily harm may be proved as an element of robbery within the generality of such an allegation, a greater force, such as the actual infliction of serious physical damage, may be established as the element. Of course, it follows that the more aggravated assault includes a specific intent, while in the lesser variety that intent is unnecessary. That is a valid distinction to differentiate the gravity of the two offenses, but it is of no particular importance when a physical beating is used as a base to support robbery, for any resultant injuries are necessarily intentionally inflicted. If they are serious, the more aggravated form of the offense is established, but, if the injuries are not serious, one of the lesser forms of assault has been proved.

In the case at bar, it is beyond cavil that the aggravated assault is shown to constitute the only force and violence by means of which the robbery was carried out. The following conclusions may be drawn unmistakably from the victim's testimony, if not from the stipulation of facts. The infliction of the injuries preceded the robbery;

they were administered for the purpose of creating fear or overcoming any resistance the victim might offer to the taking; it was necessary to show the injuries to establish the force used; and, even though they were qualitatively greater than necessary, they were nonetheless essential to support the conviction of robbery. To hold that the one form of assault would merge in the robbery charge while another would not, would permit the pyramiding of charges so that a single offense of robbery could be separated into that offense and a number of assaults of varying severity. That would be in conflict with the rule that an accused cannot be sentenced for both the greater and lesser included offenses. Accordingly, the law officer's instruction that separate punishments were in order was error since it is not the policy of military law to punish both the greater and the lesser included offenses.

Government appellate counsel terminate their argument by contending that the robbery specification alone is not sufficient to apprise an accused that he must be prepared to defend against an aggravated assault whereby serious injuries were intentionally inflicted. If there was any substance to that argument, it should have been raised by the accused, but, aside from that, we find no merit in the Government's contention. The term "force and violence" includes physical injuries, both serious and minor. In the specification, the term was not narrowed, and in robbery, force must be used to obtain the property. Here the accused was well aware of the only form of violence used to rob the victim. Therefore, it seems a bit tenuous to contend that he might be misled because he was not apprised of the possibility that he must be prepared to defend against an assault wherein serious bodily injuries were intentionally inflicted.

Holding, as we do, that the law officer's instruction on the maximum imposable punishment was error, we are faced with the question of prejudice. We note that the court returned a sentence of confinement for eight years. We further note that the convening au-

**643**

thority followed the staff judge advocate's recommendation to reduce the sentence to two and one-half years, in accordance with a pretrial agreement with the accused. The sentence reduction is substantial, but we have no way of ascertaining what sentence a board of review would consider appropriate in the light of our holding. Therefore, the record must be returned for the purpose of reassessing sentence.

The decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Army for reference to a board of review for reassessment of sentence.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

As the principal opinion points out, multiplicity depends upon "the allegations of the specifications ▆▆▆ in conjunction with the evidence." See United States v Brown, 8 USCMA 18, 23 CMR 242; United States v Larney, 2 USCMA 563, 10 CMR 61. In my opinion, the evidence shows two acts sufficiently separate in time and condition to constitute separate offenses. Both the parties and all reviewing authorities below concluded that the evidence established two offenses. I cannot say that their conclusion is wrong as a matter of law. I would, therefore, affirm the decision of the board of review.