UNITED STATES, Appellee

v

FRANK R. KING, Private, U. S. Marine Corps, Appellant

10 USCMA 465, 28 CMR 31

No. 12,795

Decided June 19, 1959

*Commander John P. Gibbons*, USN, argued the cause for Appellant, Accused. With him on the brief was *Commander Paul R. De Lay*, USNR.

*Major George M. Lilly*, USMCR, argued the cause for Appellee, United States. With him on the brief was *Commander Robert R. Marsh*, USNR.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

During the early morning hours of August 7, 1958, Sergeant Carl G. Williams, the victim in this case, and a companion were returning from a nearby town to their base in Hawaii. Sergeant Williams was driving a car which he had borrowed the previous evening, and his friend had fallen asleep in the back seat. While en route, he stopped to pick up three other servicemen hitchhiking back to the base, and they

crowded into the front seat so as not to disturb the sleeping passenger in the rear. One of these three was the accused.

Before reaching the base, Sergeant Williams was importuned to stop the car in order that one of the men might relieve himself, and in accordance with the request the sergeant drove the car off the road about a hundred yards. Almost immediately he noticed the keys were missing from the ignition lock, and got out of the car to ask which of the men had taken them. At that moment he was seized and severely beaten by two of the passengers whom he had befriended, and left semiconscious by the side of the road. His nose had been broken in four places and his body was badly bruised. Shortly thereafter the third member of the trio persuaded his companions to place the victim on the floor in the rear seat, and with that accomplished, the car was driven to a point several hundred yards from the gate of the base. The group then wiped their fingerprints from the car and walked on foot to the base. The victim meanwhile recovered consciousness, and finding the car keys on the floor, drove to the gate where he saw the three men, and they were thereupon apprehended.

During the trial the third member of the group who had not taken part in the beating testified for the Government. He stated, *inter alia,* that this accused participated in the assault; that after the car had been parked outside the gate, he saw a wallet in the accused's hand as the group stood a short distance from the car; that a few minutes later he walked back to the car and saw the wallet lying on the ground; and that he threw it into some nearby bushes before he and his companions started walking to the base.

Largely on the basis of these facts the accused was charged and convicted on two charges and specifications, only one of which presently concerns us. Charge I alleged a violation of Article 122, Uniform Code of Military Justice, 10 USC § 922 (robbery), and the specification thereunder read in pertinent part:

"In that Private Frank R. KING, . . . did, . . . by means of force and violence, steal from the person of Sergeant Carl G. WILLIAMS, . . . against his will, a wallet, of a value of about $3.00, the property of the said Sergeant Carl G. WILLIAMS, . . ."

To this charge and specification the accused pleaded not guilty, and at the close of the taking of testimony, the law officer held an out-of-court conference with counsel on his proposed instructions. At that time he stated he was going to instruct the court-martial on the lesser included offenses, including assault in which serious bodily harm was intentionally inflicted. The accused was represented by both civilian and military counsel, and they concurred with the law officer as to the offenses which were lesser included.

After deliberating on the findings, the court, by exceptions and substitutions, returned the following verdict:

"Of the specification of Charge I guilty, except the words and figures 'steal from the person of' and 'against his will, a wallet of the value of about three dollars, the property of the said Sergeant Carl G. Williams, U. S. Marine Corps' substituting therefore [sic], respectively the words 'commit an assault upon' and 'by striking him and thereby intentionally inflicting grievous bodily harm to wit: a fractured nose,' of the excepted words, not guilty, of the substituted words, guilty. Of Charge I, not guilty, but guilty of a violation of Article 128."

In short, the court-martial, on the basis of instructions by the law officer that it could properly consider a lesser included offense of assault with intentionally inflicted grievous bodily harm, substituted a finding of guilty of this latter offense for the crime of robbery originally charged. The legality of this substitution now forms the issue before us, and was stated in our grant of review as follows:

"Whether the finding of the intentional inflicting of grievous bodily harm as lesser included in robbery is legal."

In urging a negative answer to this

question appellate defense counsel have set forth several arguments which shall be considered in turn. Counsel's primary contention is that the offense of assault with grievous bodily harm intentionally inflicted includes a particular element not contained in the offense of robbery—namely, the specific intent to inflict such harm—and therefore an assault of this type cannot be lesser included in the crime of robbery. While clearly this argument has some color of validity, we find the conclusion inapposite here.

Article 79, Uniform Code of Military Justice, 10 USC § 879, provides:

"An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein."

In explanation of this Article, paragraph 158, Manual for Courts-Martial, United States, 1951, states in part:

"An offense found is necessarily included in an offense charged if all of the elements of the offense found are necessary elements of the offense charged. An offense is not included within an offense charged if it requires proof of any element not required in proving the offense charged or if it involves acts of which the accused was not apprised upon his arraignment."

It is too well settled to warrant further discussion that one of the necessary elements of the offense of assault with intentional infliction of grievous bodily harm is the specific intent to do physical injury of this nature to the victim. United States v Backley, 2 USCMA 496, 9 CMR 126. A finding of mere general intent to commit this crime is insufficient to support conviction. See Clark and Marshall, A Treatise of the Law of Crimes, 6th ed, § 10.17, page 650. Moreover, it is equally well settled that the crime of robbery need not contain this particular element but rather it may be supported by a finding of a general intent assault with the

specific intent permanently to deprive the owner of the fruit of the unlawful taking. Were we to conclude our reasoning at this juncture, defense counsel's theory might be more acceptable. However, study of prior cases indicates that when considering intent, a greater offense which requires only a general intent may include lesser crimes which involve specific intent. Take, for example, an assault with intent to rape. Clearly this offense is lesser included within the crime of rape, yet the assault requires a specific intent whereas the greater crime is one of general intent. The rationale which supports this conclusion may be found in United States v Morgan, 8 USCMA 341, 24 CMR 151. There the Court was divided on whether assault with intent to commit sodomy was a lesser included offense of the completed crime, but disagreement did not extend to the matter of specific intent. With regard to this element the Court reasoned:

"Moreover, it is unrealistic to say, as does the Government, that the aggravated assault requires proof of a specific intent while the completed act of sodomy does not. True, in defining crimes, the legislature may require a specific state of mind on the part of the wrongdoer in connection with a particular act; other offenses are defined without regard to a special state of mind, and these are described judicially as acts which require only a 'general criminal intent.' The difference of definition, however, has no application to the present problem. Rape is also said to require only a general criminal intent. Yet, assault with intent to commit rape is a lesser included offense. The same is true of murder and assault with intent to commit murder. See United States v Holman, 3 USCMA 396, 399, 12 CMR 152. Necessarily, in committing an act of sodomy, the actor intends to accomplish the unnatural union. That intention precisely reflects the state of mind of one who assaults with the intention of committing sodomy. *From the standpoint of intention, therefore, the assault does not require proof of an*

*intent different from that present in the completed offense.* Cf. United States v Duggan, 4 USCMA 396, 400, 15 CMR 396." [Emphasis supplied.]

From this language it is clear that the presence of a specific intent in an offense does not, in and of itself, preclude that offense from being lesser included within a general intent crime—this for the reason that the allegation of a crime imports some criminal intent and the specific intent is merely an explicit form of the *mens rea* necessary to support a criminal conviction. Having directly or inferentially alleged a criminal intent, the Government may, in establishing a lesser offense, show the specific type, providing the accused is not misled in his defense.

While the rationale set forth above is helpful, it is not completely dispositive of the granted issue, for in the case of assault with intent to rape, murder, or commit sodomy, the specific intent is to commit the greater offense. In our present case the specific intent found by the court-martial was not to commit the robbery originally charged, but rather to inflict grievous bodily harm upon the victim. The distinction does not, however, present difficulty, nor is it novel to this Court.

The sufficiency of the evidence to support the offense found is not questioned and therefore in its narrowest form the issue before us is whether the allegations of the initial charge and specification of robbery were sufficient to plead the aggravated assault found by the court. In United States v McVey, 4 USCMA 167, 15 CMR 167, the accused had been convicted of robbery by force and violence and of assault with a dangerous weapon. In holding that where, as in that case, the allegations of the specification were broad enough to permit proof of the use of a deadly weapon, and its use constituted the force and violence of the robbery charge, the aggravated assault was a lesser included offense within the latter, the Court reasoned:

"Tested somewhat differently, if we assume that the Government had alleged the offense in the same language, but it had been unable to establish the larceny, would not the allegations and the proof support a finding of assault with a dangerous weapon? We thought so in United States v Craig, *supra*, and we believe so here. The general rule is that where the specification contains facts showing all the constitutent elements of the minor offense, it sufficiently alleges that offense. In construing the specification, some liberality of interpretation is permitted. Here the specification charged that the accused 'by means of force and violence' did steal. The specific means was not identified, but a weapon used in a dangerous manner is clearly within the coverage of the phrase. Therefore, unless the accused was in some way misled to his prejudice the specification meets the minimal requirements. The test we have previously announced for sufficiency is this:

'. . . We have already made clear the test to be applied in determining the sufficiency of a specification—it must reasonably inform the accused of the charges he is expected to meet, enable him to properly prepare his defense, and, together with the evidence, be sufficient to provide protection against subsequent prosecution for the same offense.' [United States v Schumacher, 2 USCMA 134, 7 CMR 10.]

"Giving the accused the benefit of every doubt, he was informed that he must be prepared to meet a charge of robbery involving a violent and forceful assault. If there was any assault in this case, and all reasonable persons would conclude there was one, the only means used would establish the aggravated nature of the offense. Accused was adequately apprised·that he would be required to meet that issue and the other factors of the test are clearly present."

While in *McVey* the lesser included offense was one of general intent, namely, assault with a dangerous

weapon, the distinction renders the test of sufficiency of the specification, as applied to this case, no less valid. This was demonstrated in United States v Walker, 8 USCMA 640, 25 CMR 144, where the accused was convicted of robbery and assault in which grievous bodily harm was intentionally inflicted. After quoting at length from the language of the *McVey* case, we stated:

"... If the pleadings allege and the facts establish the necessary elements of assault with a means likely to produce great bodily harm or of assault with serious injuries intentionally inflicted, either may form the base to support the robbery charge. It must be remembered that an allegation of force and violence without more is broad enough to embrace injuries intentionally inflicted. Certainly, if force which is likely to produce grievous bodily harm may be proved as an element of robbery within the generality of such an allegation, a greater force, such as the actual infliction of serious physical damage, may be established as the element. Of course, it follows that the more aggravated assault includes a specific intent, while in the lesser variety that intent is unnecessary. That is a valid distinction to differentiate the gravity of the two offenses, but it is of no particular importance when a physical beating is used as a base to support robbery, for any resultant injuries are necessarily intentionally inflicted. If they are serious, the more aggravated form of the offense is established, but, if the injuries are not serious, one of the lesser forms of assault has been proved."

If we apply the standards set out in *McVey* and *Walker* we have no difficulty in concluding the original specification in the instant case was sufficient to support the finding. The specification alleged robbery "by means of force and violence," and this allegation is broad enough to embrace any form of force and violence used to obtain the victim's property. It would be illogical to say that injuries inflicted for the purpose of forcibly tak-

ing property from the person of another would not be intentionally imposed. Moreover, as in *Walker*, here the proof of force and violence "necessarily established the offense of intentionally inflicting grievous bodily harm, for that was the only force employed."

Appellate defense counsel next urge that the allegation of force and violence was insufficient to apprise the accused of the included offense against which he had to defend, namely, the intentional infliction of grievous bodily harm. In answer to this contention, we first quote the following language from United States v Walker, supra:

"Government appellate counsel terminate their argument by contending that the robbery specification alone is not sufficient to apprise an accused that he must be prepared to defend against an aggravated assault whereby serious injuries were intentionally inflicted. If there was any substance to that argument, it should have been raised by the accused, but, aside from that, we find no merit in the Government's contention. The term 'force and violence' includes physical injuries, both serious and minor. In the specification, the term was not narrowed, and in robbery, force must be used to obtain the property. Here the accused was well aware of the only form of violence used to rob the victim. Therefore, it seems a bit tenuous to contend that he might be misled because he was not apprised of the possibility that he must be prepared to defend against an assault wherein serious bodily injuries were intentionally inflicted."

If the foregoing quotation does not fully answer the contention, then we point out certain salient facts found in the record which show this assertion to have little merit. As previously noted, the accused and his counsel were informed before the case was submitted to the court-martial that this particular offense was considered by the law officer to be included in the

470

crime charged. Defense counsel were interrogated as to their views, and they concurred. When the instructions were given, the members of the court-martial were informed they could return a finding of this particular offense and, upon being interrogated by the law officer, defense counsel announced they had no objections to the charge. Prior to the time the court-martial was instructed, defense counsel argued the case, and the pitch of the argument was an invitation to consider a finding of not guilty or something less than robbery because the Government had failed to establish a taking of the wallet. The strategy was successful for the lesser offense was found and, while the maximum sentence imposable for it together with the other offense of which accused and his partner in crime were convicted was dishonorable discharge, total forfeitures, and confinement for seven years, petitioner's co-accused escaped a punitive discharge and was sentenced only to six months confinement with forfeitures and reduction. This accused did not fare quite so well for he received a bad-conduct discharge and confinement and forfeitures for eighteen months, but the difference can be reconciled by other facts in the record. Be that as it may, it is clearly evident that the defense was not only apprised of the offenses they were required to defend against, but affirmatively sought to use them for obtaining compromise findings. Under those facts, it is impossible to conceive of any way in which the accused was misled.

Finally, defense counsel cite our language in United States v Craig, 2 USCMA 650, 10 CMR 148, to support the proposition that we have excluded this offense as being lesser to the crime of robbery.

". . . Those offenses, if established by the evidence, which may be included within that charge are larceny or wrongful appropriation, assault with a dangerous weapon, or assault with intent to commit robbery or larceny."

Counsel urge that because assault with intent to inflict grievous bodily harm was not included within this language, we have conclusively held that the offense cannot be lesser included within robbery. With this interpretation we must disagree. In the pertinent part of the *Craig* opinion, we were considering the sufficiency of the evidence to raise offenses lesser included to robbery. However, there the victim of the robbery fled and escaped injury. Thus the state of the facts gave rise to no indication of grievous bodily harm, and defense counsel in the case apparently realized this for that particular form of aggravated assault offense was neither mentioned nor considered. Under these circumstances we are unwilling to hold that the language quoted from *Craig* is or was meant to be an exhaustive catalogue of all possible offenses lesser included in robbery. This view is supported by the *McVey* and *Walker* cases herein quoted, both of which followed *Craig* in time and cited it as authority.

For the reasons set forth above and under the facts of this case, we hold that the court-martial's finding of intentional infliction of grievous bodily harm as a lesser included offense of robbery was legal in all respects. The decision of the board of review is, therefore, affirmed.

Judge FERGUSON concurs.

Chief Judge QUINN concurs in the result.